## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| 500 OAKWOOD LLC, *et al.* | ) | |
| | ) | Case No. 10-34821 |
| Debtors. | ) | |
| | ) | Hon. John H. Squires |

### AMENDED FINAL ORDER AUTHORIZING USE OF CASH
### COLLATERAL AND GRANTING REPLACEMENT LIEN

Upon the continued hearing on the Motion for Entry of Interim Order Authorizing Use of

Cash Collateral (the "*Cash Collateral Motion*") filed jointly by Magil Corporation and 500

Oakwood, LLC (the "*Debtors*") pursuant to §§ 105, 361, 363, 503 and 507 of Title 11 of the

United States Code (the "*Bankruptcy Code*"), Rule 4001 of the Federal Rules of Bankruptcy

Procedure (the "*Bankruptcy Rules*") and Local Bankruptcy Rule 4001-2, and the Debtors' request

for authority for Magil to use Cash Collateral of the Bank,[1]

**THE COURT HEREBY FINDS:**

A.    <u>Petition Date</u>.  On August 3, 2010 (the "*Petition Date*"), the Debtors filed their

voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the

bankruptcy cases of the Debtors shall be referred to as the "*Case*").

B.    <u>Debtors in Possession</u>.  The Debtors have continued in the management and

possession of their businesses and properties as Debtors-in-Possession pursuant to Bankruptcy

Code §§ 1107 and 1108.  No Official Committee of Unsecured Creditors has not been appointed

in the Case as of the date hereof.

---

[1] Capitalized terms not otherwise defined herein or in the Bankruptcy Code shall have the meaning ascribed thereto in the Cash Collateral Motion.

C.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this proceeding and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Prepetition Claim Against Magill</u>.  Subject to the provisions of paragraph 6 below, the

Debtor acknowledges, agrees and stipulates that:

(i)    Pursuant to that certain Business Loan Agreement dated as of October 5, 2007

entered into by Magil and Harris Bank (as amended, supplemented, waived and otherwise modified from

time to time, the "Loan Agreement" and together with all other security agreements, documents, notes,

instruments and any other agreements delivered pursuant thereto or in connection therewith, the "*Financing*

*Documents*"), Harris Bank made loans and advances to, and/or provided other financial accommodations to or for

the benefit of the Debtor from time to time;

(ii)    The Debtor was, as of the Petition Date, indebted to Harris Bank on account of the

Indebtedness (as defined below), which is comprised of amounts due in connection with the Financing

Documents and unpaid fees, costs and expenses in an unliquidated amount. For purposes of this Order, the term

"Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under

the Financing Documents, and all interest on, fees and other costs, expenses and charges owing in respect of,

such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and

other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Financing

Documents and this Order), which as of August 18, 2010, such total Indebtedness was $629,295.30, plus

attorneys' fees and costs.

(iii)    Pursuant to the Financing Documents, the Debtor granted to and/or for the benefit of

Harris Bank first priority and continuing pledges, liens and security interests (the "*Prepetition Liens*")

to secure the Indebtedness, on and in substantially all of property of the Debtor, wherever located,

whether real or personal, whether tangible or intangible, and whether now existing or hereafter acquired,

including proceeds, products, offspring, rents and profits thereof (the "*Prepetition Collateral*");

(iv)    As of the Petition Date and immediately prior to giving effect to this Order, (a) the

Financing Documents are valid and binding agreements and obligations of the Debtor and are enforceable

against the Debtor in accordance with their terms, (b) the Prepetition Liens (i) constitute valid, binding,

enforceable and perfected first priority security interests and liens, but only to the extent such permitted liens

are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date

(or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and

(ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the

Bankruptcy Code or applicable non-bankruptcy law, and (c) the Indebtedness constitutes the legal, valid and

binding obligations of the Debtor, and the Indebtedness, and any amounts paid at any time to Harris Bank on

account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of

any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or

subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

(v)    The Debtor has waived, discharged and released any right it may have to

challenge any of the security for the Indebtedness.

**Based upon the foregoing findings and conclusions, the Cash Collateral Motion, and
the record before the Court with respect to the Cash Collateral Motion, and good and
sufficient cause appearing therefor,**

**IT IS HEREBY ORDERED that:**

1.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of

this Order, the Debtors may use Cash Collateral to pay actual, ordinary, and necessary expenses

set forth in the budget attached hereto as Exhibit "A," or as such budget may be modified in

writing with the prior written consent of Bank, which shall not be unreasonably withheld (the

"*Budget*"). In no event shall the Debtors use Cash Collateral to pay any items in excess of

115% of the amount set forth in the Budget, either by line item or in the aggregate, measured on a

bi-weekly basis.

2.      Harris Bank is hereby granted, retroactive to the Petition Date and without the

necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully

perfected liens (the "*Adequate Protection Liens*") of the highest available priority, subject only to

any valid and enforceable preexisting liens, upon any property that the Debtor acquires after the

Petition Date including, without limitation, any accounts receivable generated by the Debtor's

postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy

Code.

3.      Adequate Protection Superpriority Claims. Pursuant to Sections 503(b)

and 507(b) of the Bankruptcy Code and to the extent of any Deficiency, the Court grants

to the Prepetition Bank an allowed superpriority administrative expense claim in each of the

Cases (the "*Adequate Protection Superpriority Claim*"). The Adequate Protection

Superpriority Claim shall be junior to all secured claims and to the quarterly fees payable to

the United States Trustee pursuant to 28 U.S.C. § 1930; or the fees and expenses of the Clerk

of this Court.

4.      Adequate Protection Payments. Within ten (10) business days following

the Debtor's receipt of a written summary invoice (with a copy delivered to Debtor's counsel,

the U.S. Trustee and any counsel to an official committee of unsecured creditors (if

appointed, the "*Committee*"), the Debtor shall pay Harris Bank's reasonable fees and expenses

for legal counsel rendered postpetition that relate to the Indebtedness and Harris Bank's

interests in the Debtor's Case; provided, that none of such fees and expenses, as adequate

protection payments hereunder, shall be subject to approval by the Court or to the United States

Trustee Guidelines, and Harris Bank shall not be required to file with respect thereto any

interim or final fee application with the Court; provided, further, that if an objection to a

professional's invoice is made within ten (10) business days following the Debtor's receipt

of such invoice, or if the total fees to date exceed $20,000, the Debtor shall only be required

to pay the undisputed amount or an amount up to $20,000 and the Court shall have

jurisdiction to determine any dispute concerning such invoice or payment of additional fees.

5.    In addition, the Debtors are authorized to make interest payments of

$3,500 per month to the Bank.

6.    The Debtors' Obligations. The Debtors shall maintain insurance of the kind

covering the Prepetition Collateral including, without limitation, life, fire, hazard,

comprehensive, public liability, and workmen's compensation as may be currently in effect,

and obtain such additional insurance in an amount as is appropriate for the businesses in

which the Debtors are engaged.

7.    Notwithstanding anything herein to the contrary, including the Debtor's

stipulations and releases herein solely as they relate to Harris Bank, (a) the Debtor shall have

until 14 days from the date it receives UCC-1 Statement evidencing the perfection of the

Harris Bank liens and any applicable loan documents, (b) the Committee, if appointed, shall

have until the later of (i) 60 days from the date of appointment of the Committee and (ii) 75

days from the entry of this Order, and (c) any other non-debtor party in interest (including,

without limitation, any receiver, administrator or trustee appointed or elected in the'

Case or any successor case or in any jurisdiction) shall have until 75 days from the entry of

this Order (the applicable date, (the "*Investigation, Termination Dates*") to investigate the

validity, perfection, and enforceability of the Prepetition Liens or to assert any other

claims or causes of action against Harris Bank. If the Debtor, Committee (if appointed),

or any non-debtor party in interest, determines that there may be a challenge by the

Investigation Termination Dates, the Debtor, Committee (if appointed) or other non-debtor

party in interest shall have only until the applicable Investigation Termination Date to

commence an adversary proceeding or contested matter (each, a "*Challenge*"), as required by

the applicable Bankruptcy Rules, on behalf of the Debtor's estate setting forth the basis of any

such Challenge.  In no event shall the filing of any such Challenge affect any of the rights,

privileges, powers or remedies of Harris Bank under this Order or the Financing Documents

pending a ruling on such Challenge. If no Challenge is filed on or before the appropriate

Investigation Termination Date (or such other later date as extended by the written consent of

the Debtor and Harris Bank), then the agreements, acknowledgements, releases and

stipulations contained in paragraph D of this Order shall be irrevocably binding on the estates, the

Committee (if appointed) and all other parties in interest. If the Debtor initiates a Challenge,

Harris Bank may withdraw its consent to this Agreed Order which shall terminate upon 7

days' notice to the Debtor.

      8.    <u>Retention of Jurisdiction.</u> The Court has and will retain jurisdiction to enforce

this Order according to its terms

      9.    <u>Automatic Stay.</u> The Automatic Stay is hereby vacated and modified to the

extent necessary to permit (a) the Debtors and the Bank to commit all acts and take all actions

necessary to implement this Order, and (b) all acts, actions, and transfers contemplated herein.

      10.    <u>Expiration.</u>  This Order will expire on January 15, 2011.

Enter:

NOV 1 8 2010

_____
United States Bankruptcy Judge

# EXHIBIT "A"

Magil Corporation -
Budget - 11/26 to 2/18

| Week Ending: | 11/26/10 | 12/3/10 | 12/10/10 | 12/17/10 | 12/24/10 | 12/31/10 | 1/7/11 | 1/14/11 | 1/21/11 | 1/28/11 | 2/4/11 | 2/11/11 | 2/18/11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ 26,029.22 | $ 40,873.22 | $ 26,398.61 | $ 33,797.70 | $ 20,743.90 | $ 30,161.14 | $ 8,694.21 | $ 18,640.31 | $ 7,838.97 | $ 25,085.27 | $ 10,395.40 | $ 27,126.97 | $ 15,040.16 |
| Cash Receipts | $ 32,234.00 | $ 35,000.00 | $ 32,000.00 | $ 40,000.00 | $ 35,000.00 | $ 43,000.00 | $ 45,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 |
| **Total Cash** | $ 58,263.22 | $ 75,873.22 | $ 58,398.61 | $ 73,797.70 | $ 55,743.90 | $ 73,161.14 | $ 53,694.21 | $ 68,640.31 | $ 57,838.97 | $ 75,085.27 | $ 60,395.40 | $ 77,126.97 | $ 65,040.16 |
| **Disbursements** | | | | | | | | | | | | | |
| Total Employment Related | $ 3,085.67 | $ 22,507.60 | $ 1,400.00 | $ 22,451.00 | $ - | $ 29,131.17 | $ 56.60 | $ 22,451.00 | $ - | $ 28,136.67 | $ 56.60 | $ 22,451.00 | $ - |
| Total Utilities | $ 137.01 | $ 2,725.00 | $ 2,350.00 | $ 1,000.00 | $ 137.01 | $ 2,725.00 | $ 2,000.00 | $ 350.00 | $ 1,137.01 | $ 3,725.00 | $ 2,000.00 | $ 350.00 | $ 1,137.01 |
| Total Vendors | $ 7,552.32 | $ 14,278.00 | $ 16,250.00 | $ 21,727.50 | $ 16,125.30 | $ 20,100.00 | $ 24,250.00 | $ 26,100.00 | $ 26,750.00 | $ 26,100.00 | $ 26,750.00 | $ 26,100.00 | $ 26,750.00 |
| Freight Companies | $ 1,357.95 | $ 1,232.83 | $ 1,367.41 | $ 1,175.73 | $ 854.45 | $ 1,175.73 | $ 1,175.73 | $ 1,175.73 | $ 1,175.73 | $ 1,175.73 | $ 1,175.73 | $ 1,175.73 | $ 1,175.73 |
| Maintenance | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 | $ 316.00 |
| Auto | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 |
| Business Control Systems | | $ 2,500.00 | | | | $ 2,500.00 | | | | $ 1,251.00 | | | |
| Crticard | | $ 1,251.00 | $ 1,317.50 | | | $ 1,251.00 | | | | | | | |
| Travel | $ 81.63 | | $ 400.00 | | | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 |
| Bancard Fee | | $ 550.00 | | | | | $ 550.00 | | | $ 550.00 | | | |
| Bank Fee & Adjustments | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| Entertainment | | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 |
| Harris Bank (Legal fees - second inst.) | | | | | $7,000 | | $ 3,000.00 | $ 5,000.00 | | | | $ 5,000.00 | |
| Harris Bank (interest) | $ 3,432.56 | | | | | $ 3,432.56 | | | | $ 3,432.56 | | | |
| Lodging | | | | | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 |
| Office of the U.S. Trustee | | $ 1,200.00 | | $ 1,200.00 | | $ 1,200.00 | | | | $ 1,200.00 | | $ 1,200.00 | |
| Office Supplies | | | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| Postage | | $ 150.00 | $ 150.00 | $ 150.00 | | | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 |
| Utine | | | $ 200.00 | | | | $ 200.00 | | | | $ 200.00 | | |
| Warehouse Supplies | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 |
| Equipment Leases | $ 876.86 | $ 1,805.57 | $ - | $ 3,974.96 | $ - | $ 876.86 | $ 1,805.57 | $ 2,300.00 | $ 1,674.96 | $ 876.86 | $ 520.10 | $ 3,585.47 | $ 1,674.96 |
| Advertising | $ - | $ 208.61 | $ - | $ 208.61 | $ - | $ 208.61 | $ 208.61 | $ 208.61 | $ 208.61 | $ 208.61 | $ 208.61 | $ 208.61 | $ 208.61 |
| **Totals** | $ 17,390.00 | $ 49,474.61 | $ 24,600.91 | $ 53,053.80 | $ 25,582.76 | $ 64,466.93 | $ 35,053.90 | $ 60,801.34 | $ 32,753.70 | $ 68,122.43 | $ 33,268.43 | $ 62,086.81 | $ 32,753.70 |
| Cash Balance | $ 58,263.22 | $ 75,873.22 | $ 58,398.61 | $ 73,797.70 | $ 55,743.90 | $ 73,161.14 | $ 53,694.21 | $ 68,640.31 | $ 57,838.97 | $ 75,085.27 | $ 60,395.40 | $ 77,126.97 | $ 65,040.16 |
| Expenditures | $ 17,390.00 | $ 49,474.61 | $ 24,600.91 | $ 53,053.80 | $ 25,582.76 | $ 64,466.93 | $ 35,053.90 | $ 60,801.34 | $ 32,753.70 | $ 64,689.87 | $ 33,268.43 | $ 62,086.81 | $ 32,753.70 |
| Cash Balance | $ 40,873.22 | $ 26,398.61 | $ 33,797.70 | $ 20,743.90 | $ 30,161.14 | $ 8,694.21 | $ 18,640.31 | $ 7,838.97 | $ 25,085.27 | $ 10,395.40 | $ 27,126.97 | $ 15,040.16 | $ 32,286.46 |